```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

TONYA LEE JOHNSON,

                            Plaintiff,        **1:16-cv-00831-MAT**

                                                    **DECISION AND ORDER**

        -vs-

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

## I.    INTRODUCTION

Represented by counsel, Tonya Lee Johnson ("Plaintiff") has brought this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for supplemental security income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## II.    PROCEDURAL BACKGROUND

On October 24, 2012, Plaintiff protectively filed an application for SSI, alleging disability beginning January 1, 2008 due to lower back pain, migraines, cervicalgia, insomnia, panic attacks, sleep apnea, depression, temporomandibular joint ("TMJ") disease, low white blood cells, tachycardia, anxiety, and esophageal reflux. Administrative Transcript ("T.") 135-140, 149. Plaintiff's application

was initially denied and she timely requested a hearing, which was held before administrative law judge ("ALJ") Robert T. Harvey on April 17, 2014. T. 41-73, 88-94. On July 3, 2014, the ALJ issued an unfavorable decision. T. 20-40. Plaintiff's request for review was denied by the Appeals Council on December 19, 2015, making the ALJ's decision the final decision of the Commissioner. T. 4-9. Plaintiff then timely commenced this action.

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from October 24, 2012, the application date. T. 25. At step two, the ALJ determined that Plaintiff had the severe impairments of migraine headaches, TMJ dysfunction, depressive disorder, anxiety disorder, discogenic cervical spine, and low back dysfunction, and the non-severe impairments of asthma, anemia, sleep apnea, and gastroesophageal reflux disease. *Id*. At step three, the ALJ considered Plaintiff's impairments and found that, singly or in combination, they did not meet or medically equal the severity of a listed impairment. *Id.* In particular, the ALJ considered Listings 1.04, 12.04, and 12.06 in reaching this determination. T. 26-27.

Prior to proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following

-2-

additional limitations: cannot work in areas with unprotected heights or around heavy, dangerous, or moving machinery; has occasional limitations in bending, climbing, stooping, squatting, kneeling, and balancing; cannot crawl or climb ropes, ladders, or scaffolds; has occasional limitations in her ability to reach in all directions with the right upper extremity and occasional limitations in pushing and pulling with the right upper extremity; has occasional limitations in the ability to understand, remember, and carry out detailed instructions; cannot work in areas with excessively bright lights; has occasional limitations in dealing with stress. T. 26-27.

At step four, the ALJ determined that Plaintiff had no past relevant work. T. 35. At step five, the ALJ relied on the testimony of a vocational expert to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of mail clerk and office helper. T. 35-36. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 36.

## IV. DISCUSSION

### A. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by

additional limitations: cannot work in areas with unprotected heights or around heavy, dangerous, or moving machinery; has occasional limitations in bending, climbing, stooping, squatting, kneeling, and balancing; cannot crawl or climb ropes, ladders, or scaffolds; has occasional limitations in her ability to reach in all directions with the right upper extremity and occasional limitations in pushing and pulling with the right upper extremity; has occasional limitations in the ability to understand, remember, and carry out detailed instructions; cannot work in areas with excessively bright lights; has occasional limitations in dealing with stress. T. 26-27.

At step four, the ALJ determined that Plaintiff had no past relevant work. T. 35. At step five, the ALJ relied on the testimony of a vocational expert to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of mail clerk and office helper. T. 35-36. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 36.

## IV. DISCUSSION

### A. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by

substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

In this case, Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence. In particular, Plaintiff argues that (1) the ALJ failed to make a function-by-function assessment of Plaintiff's ability to perform the mental and physical requirements of light work, (2) the ALJ failed to articulate appropriate reasons for giving little weight to the opinion of consultative psychiatric examiner Dr. Renee Baskin, (3) the ALJ ignored the impact of Plaintiff's migraines on her RFC, and (4) the ALJ failed to adequately account for Plaintiff's stress-related limitations. Plaintiff further argues that the ALJ failed to properly develop the record. For the reasons discussed below, the Court finds these arguments without merit.

**B. Function-by-Function Assessment of Plaintiff's RFC**

Plaintiff contends that the ALJ failed to perform a function-by-function analysis of her abilities and that remand is therefore required. The Court disagrees.

As a threshold matter, Plaintiff has failed to demonstrate that the ALJ failed to perform a function-by-function analysis in this case. To the contrary, the ALJ specifically discussed the sitting, standing, walking, and lifting requirements of light work. T. 27. The ALJ further expressly included in his RFC finding his assessment of Plaintiff's ability to bend, climb, stoop, squat, kneel, balance, crawl, reach, push, pull, deal with stress, and understand, remember, and carry out detailed instructions. *Id*. These are precisely the sorts of functions identified in Social Security Ruling ("SSR") 96-8p and 20 C.F.R. §§ 404.1545(b) and (c) as requiring consideration by an ALJ in his RFC assessment.

Moreover, even assuming *arguendo* that the ALJ had failed to perform a function-by-function analysis, any such error was harmless. "Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *see Goodale v. Astrue*, 32 F. Supp. 3d 345, 357 (N.D.N.Y. 2012) ("[A]n ALJ's failure to provide a function-by-function analysis...constitute[s] harmless error, provided that the absence of the analysis did not frustrate meaningful review of the ALJ's overall RFC assessment."). Here, the ALJ thoroughly considered and analyzed the medical evidence of record

-5-

and set forth in detail the basis for his RFC finding. In particular, the ALJ noted that CT scans of Plaintiff's head had revealed no acute pathology of the brain (T. 30), that Plaintiff's physical examinations had been largely unremarkable (T. 30-31, 33), that an upper gastrointestinal endoscopy of Plaintiff was normal (T. 31), that an MRI of Plaintiff's brain and multiple neurologic examinations were unremarkable (T. 31, 34), that consultative examiner Dr. Donna Miller had thoroughly examined Plaintiff and had found that she had only a mild limitation in repetitive heavy lifting, bending, reaching, pushing, and pulling (T. 33), and that Plaintiff's treating psychiatrist Dr. Sanjay Gupta had most recently assessed Plaintiff's global assessment of functioning ("GAF") score as 65 (T. 35), which indicated that Plaintiff had only mild symptoms. As the ALJ stated in summary, the RFC assessment was amply supported by "the objective evidence of record, . . . [and by] the unremarkable examinations by the claimant's treating neurologist and treating psychiatrist . . ., as well as the examination and opinion of [the] consultative examiner." T. 35. The ALJ's conclusions are fully consistent with the medical record, and his explanation permits meaningful review by this Court. The Court finds no basis for remand regarding the ALJ's alleged failure to perform a function-by-function analysis.

**C.  Consideration of Dr. Baskin's Opinion**

Plaintiff next contends that the ALJ failed to properly explain why he afforded only little weight to consultative psychiatric examiner Dr. Baskin's opinion. Again, the Court disagrees.

Dr. Baskin examined Plaintiff on December 18, 2012. T. 461-65. Plaintiff reported to Dr. Baskin that she had never undergone psychiatric hospitalization or received psychiatric outpatient treatment, but had been to one intake appointment at Lifetime Health. T. 461. A mental status examination was largely unremarkable – Plaintiff was responsive and cooperative; her manner of relating, social skills, and overall presentation were adequate; her eye contact was appropriate; her speech was fluent and clear and her expressive and receptive language were adequate; her thought processes were coherent and goal-directed; her sensorium was clear; she was oriented; and her insight and judgment were fair. T. 462-63. Plaintiff's attention and concentration and recent and remote memory skills were mildly impaired "due to distractibility secondary to physical pain or discomfort." T. 463. Dr. Baskin estimated that Plaintiff's intellectual functioning was in the below average range, but found that her "general fund of information was appropriate to [her] experience." *Id*. Dr. Baskin opined that Plaintiff would have minimal to no limitations being able to follow and understand simple directions and instructions and perform simple tasks independently. T. 464. She further opined that Plaintiff would have moderate limitations being able to maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress. *Id*. Dr. Baskin assessed Plaintiff with depressive disorder, anxiety disorder, and "pain disorder associated with general medical

-7-

condition." *Id*. In his decision, the ALJ gave little weight to Dr. Baskin's opinion, noting that it was unsupported by the evidence of record and inconsistent with the treatment records of treating psychiatrist Dr. Gupta. T. 32.

The Commissioner's regulations "require an ALJ to explain the weight given to the opinions of state agency medical consultants." *Stytzer v. Astrue*, No. 1:07-CV-811 NAM/DEP, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010). "When the medical source statement of the consultative examiner conflicts with the ALJ's RFC assessment, the plaintiff is entitled to an express recognition from the Commissioner of the existence of a favorable medical source statement and, if the ALJ declined to accept it, the reasons for not doing so." *Id*.

In this case, the ALJ acknowledged and considered Dr. Baskin's consultative opinion, explained what weight he gave it, and set forth the reasoning behind his assessment. The Court therefore finds no legal error by the ALJ. Moreover, the ALJ's assessment of Dr. Baskin's opinion is supported by substantial evidence. Dr. Baskin's opinion is inconsistent with the evidence of record, including her own examination findings - for example, Dr. Baskin observed that Plaintiff was cooperative and responsive and that her manner of relating and social skills were adequate, yet opined without explanation that Plaintiff would have moderate limitations in relating adequately with others. Similarly, Dr. Baskin observed only mild impairment in Plaintiff's attention and concentration, yet ultimately opined that she had moderate limitations in this area. Additionally, and as the ALJ noted, the limitations assessed by Dr. Baskin are inconsistent with the

-8-

records of treating psychiatrist Dr. Gupta. Mental status examinations performed by Dr. Gupta repeatedly showed that Plaintiff was "[a]ble to focus and concentrate" (T. 559, 562, 566), and from May 2013 forward (well after Dr. Baskin's one-time examination), Dr. Gupta consistently assessed Plaintiff with GAF scores of 65-75 (T. 556, 559, 562, 566) indicating that Plaintiff had at most mild symptoms. Under these circumstances, the ALJ was justified in determining that Dr. Baskin's opinion was inconsistent with the evidence of record. The Court therefore finds that the ALJ's assessment of Dr. Baskin's opinion was proper and that remand is not warranted on this basis.

**D. Assessment of Plaintiff's Migraines**

Plaintiff also argues that the ALJ's RFC finding was inadequate because he failed to account for the impact of her migraines, relying only on his own lay assessment of the medical evidence. Plaintiff's argument is unsupported by the evidence of record. Consultative examiner Dr. Miller examined Plaintiff on December 18, 2012. T. 466-470. Dr. Miller was aware of Plaintiff's migraine headaches and the treatment she had received for then (T. 466-67), and in fact diagnosed Plaintiff with migraine headaches (T. 469). Dr. Miller nonetheless opined that Plaintiff's only limitations were the need to avoid respiratory irritants (due to asthma) and a "mild limitation with repetitive heavy lifting, bending, reaching, and pulling." T. 469. The ALJ's RFC finding with respect to the impact of Plaintiff's migraines is therefore clearly supported by Dr. Miller's opinion. It is well-established that the opinion of a consultative examiner may

serve as substantial evidence in support of an ALJ decision. *See, e.g., Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011).

Plaintiff has not identified any other medical evidence of record to support the conclusion that her migraines would cause additional limitations not accounted for in the ALJ's RFC assessment. To the contrary, and as the ALJ discussed in his decision, Plaintiff's medical records show that her migraines responded well to medication. In October 2012, Plaintiff reported that she experienced "complete relief" from her migraines with Treximet. T. 434. Plaintiffs treating nurse practitioner observed in July 2013 that her migraines were "controlled with the abortive agent." T. 511. Additionally, Plaintiff began receiving Botox injections for her migraines and neck pain in November 2013 (T. 522) and in April 2014 she reported continued decreased headache frequency (T. 532). Her nurse practitioner stated that she was "responding well to Botox treatment." *Id*. In sum, Plaintiff's medical records show that the frequency of her migraines was well-managed with Botox treatment and that when she did experience a migraine, she was able to control it with medication.

For the foregoing reasons, the Court finds that the ALJ's assessment of the impact of Plaintiff's migraines was supported by substantial evidence. Accordingly, the Court finds Plaintiff's contention that the ALJ relied on his own lay opinion to be without merit.

### E. Consideration of Plaintiff's Stress-related Limitations

Plaintiff next argues that the ALJ's finding that Plaintiff had "occasional limitations in dealing with stress" was unsupported by

substantial evidence, because Plaintiff testified that could not deal with any stress at all. Again, Plaintiff's argument lacks merit.

As the ALJ noted in his decision, while Plaintiff told her primary care physician Dr. Maritza Baez that stress aggravated her symptoms, she also told Dr. Baez that it was "not difficult at all" for her "to meet home, work, or social obligations." T. 31. Additionally, the ALJ noted that state agency psychiatric consultant Dr. M. Totin had opined that Plaintiff was capable of working in a low stress environment. T. 33. Plaintiff reported to Dr. Baskin that she had panic attacks, but specifically stated that they came "out of the blue" and that they were not triggered by any specific situations. T. 32. This evidence supports the ALJ's RFC finding that Plaintiff had only occasional limitations in dealing with stress.

Plaintiff does not identify (nor is there) any medical evidence of record establishing that Plaintiff has a more serious limitation in dealing with stress than that assessed by the ALJ. Instead, Plaintiff relies on her own testimony that she was unable to deal with stress. However, while an ALJ "is required to take the claimant's reports of pain and other limitations into account," *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)(citations omitted), he "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* (citation omitted). Plaintiff has not proffered any argument to support the conclusion that the ALJ was required to credit her subjective complaints regarding

-11-

stress, and the ALJ adequately explained the basis for his findings. In particular, the inconsistency between Plaintiff's statements to her treatment providers (*i.e.* that although stress exacerbated her symptoms, she was able to meet her home, work, and social obligations without difficulty) and her hearing testimony provides an adequate basis for the ALJ's decision to not fully credit Plaintiff's allegations. Accordingly, the Court does not find that the ALJ erred in his assessment of Plaintiff's stress-related limitations.

**F.  Development of the Record**

Plaintiff's final argument is that the ALJ failed to fulfill his duty to develop the record. In particular, Plaintiff claims that there were additional medical records that were not submitted, and that the ALJ was "made aware" that they were missing. Docket No. 6-1 at 25. The Court finds that, under the circumstances of this case, the ALJ sufficiently satisfied his duty to develop the record.

The Commissioner's regulations require an ALJ to develop the record by obtaining a "complete medical history for at least the 12 months preceding the month in which [a claimant] file[s][an] application." 20 C.F.R. § 404.1512(b)(1). "Even though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require." *Long v. Bowen*, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989) (internal citations omitted). Moreover, where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records. *See*

*Martinez-Paulino v. Astrue*, 2012 WL 3564140, *14 (S.D.N.Y. Aug. 20, 2012) ("The record thus contained sufficient evidence to make a disability determination, and the ALJ was under no obligation to seek additional treatment records. Therefore, the ALJ properly satisfied his duty to develop the record."); *Valoy v. Barnhart*, 2004 WL 439424, *7 (S.D.N.Y. Mar.9, 2004) ("While the ALJ must supplement the record through his own initiatives when the record is incomplete or inadequate, this burden does not attach when the record is ample."). Where an ALJ becomes aware during the hearing that there may be additional medical records, he may satisfy his duty to develop the record by holding the hearing open to permit submission of additional records. *See Melton v. Colvin*, No. 13-CV-6188 MAT, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014) (collecting cases).

Here, at the hearing, Plaintiff's counsel informed the ALJ that she would be submitting additional records which would "pretty much complete the record." T. 66. The ALJ held the hearing open to permit counsel to submit these additional records (*id*.), and Plaintiff's counsel did indeed submit additional treatment records following the hearing. Under these circumstances, the Court finds that the ALJ appropriately discharged his duty to develop the record. *See Melton*, 2014 WL 1686827 at *8 ("the ALJ satisfied her duty to develop the record by holding the record open after the hearing and subsequently granting Plaintiff's request for an additional 7-day extension"); *see also Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (finding that ALJ fulfilled his duty to develop the record where

"[a]lthough the ALJ did not contact or obtain records" from treating physician mentioned at hearing, the ALJ held open the record, plaintiff's counsel did not request assistance from the ALJ in obtaining the records, and plaintiff's counsel stated that there was nothing further to add to the record); *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012) (ALJ satisfied duty to develop where plaintiff's counsel "requested and received additional time to obtain the evidence in question" and then "submitted additional evidence following the hearing . . . which could have led the ALJ reasonably to conclude that no further records were available or forthcoming").

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket No. 6) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 8) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                              **S/Michael A. Telesca**
                              _____
                              HON. MICHAEL A. TELESCA
                              United States District Judge

Dated:    March 22, 2018
            Rochester, New York